Estate of James W. Henry, Deceased, Lucie A. Henry, Executrix v. Commissioner.
Estate of Henry v. Commissioner
Docket No. 109513.
United States Tax Court
1943 Tax Ct. Memo LEXIS 506; 1 T.C.M. (CCH) 432; T.C.M. (RIA) 43023; January 16, 1943
*506 Estate tax: Gross estate: Insurance proceeds: Possibility of reverter. - Where decedent added a provision to a life insurance policy, in which his daughter was named as beneficiary, whereby the daughter became irrevocably possessed, during her lifetime, of the right to (1) cancel the contract and cash the policy, (2) change the beneficiary without limitation, or (3) borrow the full cash value of the policy, any rights ever again acquired in the policy by the decedent would not have been a reverter of his old title, but the acquisition of a new title, and the value of the proceeds of the policy on the date of decedent's death is not includible in his gross estate. T. F. Ryan, Esq., 2610 Grant Bldg., Pittsburgh, Pa., for the petitioner. J. Harrison Miller, Esq., for the respondent. LEECH Memorandum Opinion LEECH, Judge: This proceeding involves the redetermination of an estate tax deficiency in the amount of $4,902.33. The only issue submitted is whether respondent erred in including in the value of the gross estate of the decedent the value of a certain insurance policy, under section 302(g) of the Revenue Act of 1926 as amended. [The Facts] We find the facts as set out in *507 the stipulation under which the proceeding was submitted. The estate tax return of the petitioner was filed with the collector of internal revenue for the Twenty-third District of Pennsylvania. On February 14, 1924, the decedent, James W. Henry, obtained from the Aetna Life Insurance Company of Hartford, Connecticut, a non-participating life insurance policy on his own life. The beneficiary named in the policy was Frances E. Henry, daughter of the insured, her executors, administrators or assigns, if she survived the insured; otherwise the policy was in favor of the executors, administrators or assigns of the insured. The policy provided that if it became payable to Frances Henry O'Neil, the daughter, it should be payable to her in monthly installments of $100 each and should continue through-out her lifetime, with 240 such installments guaranteed. If the policy should become payable to any other beneficiary than Frances Henry O'Neil, the daughter, then "the provision to continue installments after the installments certain have all been paid shall be void and so remain during the continuance of this policy". Upon the death of the original beneficiary, Frances Henry O'Neil, or upon *508 the substitution of any other person as beneficiary, the annual premium of $698.30 on the policy was to be reduced to $547.50. The insured was 47 years of age and the daughter 22 years of age when the policy was issued. Under the policy as issued, the insured had the right alone to make changes in the beneficiary designation, to obtain policy loans, to acquire paid-up insurance under the policy and to cash the policy and obtain its surrender value. On May 14, 1934, in response to a formal request, the following endorsement was added to the policy: The monthly installments becoming due from the Company under this policy by reason of the death of the insured shall be payable as follows: Each of such installments shall be payable when due to Frances Henry O'Neil, daughter of the insured, if then living, otherwise to the executors or administrators of the survivor of the insured and said daughter. On November 23, 1936, the following endorsement was added to the policy: The monthly installments becoming due from the Company under this policy by reason of the death of the insured shall be payable as follows: Each of such installments shall be payable when due to Frances Henry O'Neil, *509 daughter of the insured, if then living, otherwise to the executors or administrators of said daughter." On the next day, November 24, 1936, the following endorsement was requested by decedent and on November 27, it was added to the policy: I. James W. Henry, the insured, hereby certify that the aforesaid policy is not now assigned, except to * * * and request that the following provision be incorporated in and made a part of said policy: ANYTHING IN THIS POLICY TO THE CONTRARY NOTWITHSTANDING, any right or benefit to be exercised or received under this policy during the lifetime of the insured shall be exercised or received by Frances Henry O'Neil, daughter of the insured, alone, if living; otherwise by the insured. Subsequent to November 27, 1936, Frances Henry O'Neil took no action respecting this policy, but was living when decedent died. [Opinion] The value on November 21, 1939, the date of the death of the decedent, of the entire proceeds of the above policy was $24,690. Respondent included this amount in the gross estate of decedent, as stated in his deficiency notice, "under Section 302(g) of the Revenue Act of 1926 as amended." He apparently took this action on *510 the ground that the provision in the last endorsement of the policy provided, in effect, that if the daughter predeceased the decedent he would receive all the rights and benefits under the policy he previously enjoyed. We assume that this is so since, without argument, respondent rests his position squarely upon ; ; cert. denied, ; ; Chase National Bank of the City of New York et al. v. Hickey, Fed. Supp. , (Aug. 13, 1942); ; and . Petitioner insists that none of these cases are in point. We agree. It is true that the Hallock rule has been applied to justify the inclusion of the value of the insurance policies in decedents' estates where, at the death of the insured, a right akin to a possibility of reverter in one or more of the incidents of ownership in such policy *511 to the decedent existed. ; ; and Here, however, the situation is entirely different. When the last endorsement of the policy was made on November 27, 1936, Frances Henry O'Neil, the daughter of the decedent and insured, became irrevocably possessed, during her lifetime, of the right to (1) cancel the contract and cash the policy; (2) change the beneficiary without limitation; (3) borrow the full cash value of the policy. Petitioner argues that these rights constituted all the incidents of ownership in the policy. ;. It is then said that if decedent, after that endorsement, ever again acquired any rights in this policy, it would have been by virtue of the voluntary action or inaction of Frances Henry O'Neil and that any title, thus attained, would not have been a reverter of his old title, but a new one. The validity of this argument *512 would seem to rest on the proposition that the provision in the last endorsement, "otherwise by the insured", was invalid since it would then have been an attempted limitation upon the transfer of an absolute title. See ; Law of Future Interests by Simes, Vol. 2, page 540, sec. 600. Without passing upon the soundness of this argument, we do not think decedent possessed a possibility of reverter in the insurance policy, involved here, at his death. In , decedent, in 1923, established a trust for the benefit of his children, reserving the power to alter, amend, or revoke the same. In 1924, he relinquished that power to his wife but provided that if he should survive her, he would regain the power. Decedent's wife was still living at the time of his death. We there held that no possibility of a reverter of the trust corpus existed in decedent at his death. In the opinion in that case appears the following: * * * It is true that if the wife had predeceased the grantor his death would then have assumed controlling significance. That contingency, *513 however, never occurred. Up until the time he died, as the facts demonstrated, the transfer was complete and irrevocable in so far as decedent was concerned. His death did not terminate any control by him and consequently did not vest control in anyone else. Upon the authority of that case we decide the submitted issue for petitioner. See also ; . Decision will be entered under Rule 50.